IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | |
| ) | |
| ) | |
| v.     ) | Civil Action No. 3:21cr39–HEH |
| ) | |
| DEION PENTECOST,    ) | |
| ) | |
|      Defendant.   ) | |

**MEMORANDUM OPINION**
**(Denying Defendant's Motion to Suppress Evidence)**

This matter is before the Court on Defendant Deion Pentecost's ("Defendant") Motion to Suppress. (ECF No. 16.) Defendant has moved to suppress all evidence obtained by officers during their encounter with Defendant on January 8, 2021, including drugs seized from Defendant's person, a weapon seized from Defendant's car, and Defendant's statements to law enforcement. He contends that this evidence was obtained in violation of the Fourth Amendment following an unlawful traffic stop and pat-down. Both Defendant and the United States have filed memoranda supporting their respective positions, and the Court heard evidence and oral argument on August 11, 2021. For the reasons that follow, the Court will deny Defendant's Motion to Suppress.

**I.   BACKGROUND**

The events at issue in this case are largely undisputed. Early in the evening of January 8, 2021, Officer Hill of the Henrico County Police Department's ("HCPD") West Directed Action Response Team ("DART") observed a burgundy Buick La Sabre parked

near the main entrance of the Motel 6 located at 7831 Shrader Road in Henrico County, Virginia. DART is a police unit focused on violent crime. The team had been conducting surveillance on the Motel 6 due to the high prevalence of crime at the hotel. Officer Hill ran the license plate of the vehicle through the Virginia Criminal Information Network ("VCIN") and determined that the vehicle was registered to Defendant. Officer Hill also entered Defendant's information into the Law Enforcement Information Exchange ("LINX") and discovered that Defendant was a known member of the Bloods gang and had a state murder conviction from 2006. He radioed this information to DART Officers Podolak and Ritchie, who were in the area at the time.

After Officer Hill had been surveilling the La Sabre for approximately twenty minutes, Defendant exited the hotel and sat in the front passenger seat of the vehicle. The vehicle exited the parking lot and turned onto Shrader Road without stopping or yielding to oncoming traffic. Officer Hill followed the vehicle and notified Officers Podolak and Ritchie of its movement. Based on Officer Hill's communications, Officers Podolak and Ritchie in turn joined Hill in following the La Sabre. Officer Ritchie joined specifically to initiate a traffic stop. All three officers were in separate unmarked vehicles. Only Officer Ritchie's vehicle was equipped with lights and sirens, and, therefore, only Officer Ritchie could effect a traffic stop. Over the course of two miles, the officers witnessed five violations of Virginia law as follows: (1) the vehicle failed to stop when exiting the hotel parking lot onto Shrader Road; (2) the left taillight failed to illuminate; (3) the right

2

part of the third brake light failed to illuminate; (4) Defendant littered by throwing a cigarette butt out the window; and (5) the vehicle's registration was expired.[1]

Officer Ritchie initiated a traffic stop as soon as he was able to maneuver his vehicle behind the La Sabre, at approximately 6:00 p.m. Officer Ritchie approached the driver's side of the vehicle, notified the driver and Defendant that the reason for the stop was defective equipment, and obtained identification from both individuals and the vehicle's registration from Defendant. Officer Podolak approached the front passenger window and Officer Hill stood by the vehicle's rear. All three officers used flashlights given the lack of streetlighting and growing darkness. Officer Ritchie wore a standard-issue HCPD uniform, and Officers Hill and Podolak wore plainclothes under bulletproof vests emblazoned with police markings and their badges on their hips. From his position beside the front passenger window, Officer Podolak observed on the floorboard at Defendant's feet a folded piece of white paper that is commonly used to roll marijuana cigarettes.

Officer Podolak initiated conversation with Defendant, asking him his name and if it was "cool" to call him "Deion." (Def.'s Mot. Suppress 3, ECF No. 16.) Officer Podolak then said, "Can you come out and talk to me real quick, Deion? You're not in trouble or anything." (*Id.*) When Defendant exited the vehicle, Officer Podolak noticed

---

[1] The respective sections of the Virginia Code prohibiting this conduct are as follows: (1) 46.2-826; (2)–(3) 46.2-1003; (4) 33.2-802; and (5) 46.2-613. After the events at issue here, § 46.2-1003 was amended such that violations of this provision may no longer form the basis for a traffic stop. Even if this amendment is deemed to be retroactive, the remaining violations of Virginia law support the lawful stop in this case.

3

marijuana residue on his pants. Officer Podolak directed Defendant to the rear of the vehicle and asked if he had any weapons on his person, which Defendant denied. Officer Podolak said, "You cool if I pat you down real quick?" (*Id.*) Defendant did not respond verbally but instead raised his arms while facing Officer Podolak. Defendant then used his arms to brush off the marijuana residue on his pants, turned to face away from Officer Podolak, and raised his arms again. Only at that time did Officer Podolak instruct Defendant, "go ahead and spread your arms out like an airplane." (*Id.* at 4.) During the pat-down, Officer Podolak smelled the odor of raw marijuana coming from Defendant and felt a semi-firm raspberry-sized object in his pants pocket. Officer Podolak asked Defendant if he had any marijuana on his person and Defendant responded that he had "a little bit." (*Id.*) Officer Podolak detained Defendant by placing him in handcuffs. Officer Podolak told Defendant that he was not under arrest and continued to ask him about the marijuana. Defendant admitted to having a few grams of marijuana in his front pants pocket. Officer Podolak then informed Defendant of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). Officers Ritchie and Hill were not involved in Defendant's pat-down but remained in the vicinity. All three officers' weapons remained holstered throughout the encounter. After Officer Podolak detained Defendant, Officer Ritchie conducted a search of the vehicle and found a loaded firearm under the front passenger seat. Defendant admitted that the gun was his and stated that he bought it for his birthday.

    Defendant's challenge begins with the lawfulness of the traffic stop. Defendant argues that the DART officers waited too long to initiate the traffic stop by traveling two

miles before conducting the stop. However, Defendant concedes that no legal authority provides a time frame outside of which a traffic infraction becomes too stale to form the basis for a stop. Furthermore, the evidence demonstrates that the delay was reasonable, indeed necessary, to allow the officers to conduct the stop safely and in accordance with established HCPD procedures. Taking this in conjunction with the various violations of state law observed by the officers, the Court finds that the officers effected the traffic stop in accordance will all applicable laws.

Defendant also contests voluntarily consenting to a pat-down and claims that his arm movement alone was insufficient to convey consent considering the circumstances of the traffic stop. Therefore, he argues, his ensuing statements and the weapon seized in the subsequent search of his vehicle should be suppressed as fruit of the poisonous tree. The Government responds that Defendant voluntarily consented to the pat-down and, in the alternative, that the pat-down was justified by Officer Podolak's reasonable suspicion that Defendant was armed and dangerous.

## II. ANALYSIS

"The Fourth Amendment prohibits unreasonable searches, and searches conducted without a warrant are per se unreasonable unless a valid exception to the warrant requirement is applicable. Voluntary consent to a search is such an exception." *United States v. Lattimore*, 87 F.3d 647, 650 (4th Cir. 1996) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)). "A defendant who voluntarily consents to a search waives his Fourth Amendment rights, and the police officer may conduct the search without probable cause or a warrant." *United States v. Perrin*, 45 F.3d 869, 875 (4th Cir. 1995)

5

(citing *Schneckloth*, 412 U.S. at 235). Assessing voluntariness is a question of fact. *Schneckloth*, 412 U.S. at 227 (holding that an individual's knowledge of his right to refuse a request to search is not dispositive of the question of voluntariness). Courts must examine the totality of the circumstances in deciding whether consent to search was "freely and voluntarily given" in accordance with the Fourth Amendment. *Id.* at 222, 227 (internal citations omitted). Relevant circumstances include "the characteristics of the accused (such as age, maturity, education, intelligence, and experience)," and "the conditions under which the consent to search was given (such as the officer's conduct; the number of officers present; and the duration, location, and time of the encounter)." *Lattimore*, 87 F.3d at 650.

Broadly speaking, whether a defendant consented depends on the method and delivery of the consent itself as well as the circumstances surrounding the interaction. First, as to method of delivery, a defendant may indicate consent to a search using movements and body language, as Defendant here did by raising his arms and moving so that Officer Podolak could pat him down. *See United States v. Cohen*, 593 F. App'x 196, 201 (4th Cir. 2014) (quoting *United States v. Hylton*, 349 F.3d 781, 786 (4th Cir. 2003)) ("[C]onsent to a search need not be express, but 'may be inferred from actions as well as words.'"). For example, in *United States v. Wilson*, the court found that the defendant provided consent to a pat-down search when the defendant responded to the request by "shrugging his shoulders and raising his arms." 895 F.2d 168, 172 (4th Cir. 1990). Similarly, the defendant in *Cohen* affirmatively invited a police officer to search him when, after the police officer asked the defendant if he had a weapon, he responded "no"

6

and "voluntarily raised his arms." 593 F. App'x at 201. The court further noted that the defendant "did not lower his arms, protest, or move away at any point before, during, or after the pat-down." *Id.* (internal citation omitted). Defendant here raised his arms while facing Officer Podolak, then turned to face away from Officer Podolak and raised his arms again. Like the defendant in *Cohen*, Defendant here never protested, moved away, or in any way demonstrated discomfort while Officer Podolak executed the pat-down. *See id.* Defendant's actions and demeanor here mirror established physical manifestations of consent.

The second piece of the puzzle is the environment in which a defendant consents. In both *Wilson* and *Cohen*, the Fourth Circuit based its analyses in part on the lack of coercion surrounding the defendants' consent. In *Cohen*, two police officers executed a traffic stop and asked the defendant to step out of the vehicle because he seemed unusually nervous. *Id.* at 197–98. One of the officers asked if the defendant had a weapon on him, and then initiated the pat-down after the defendant responded "no" and raised his arms. *Id.* at 201. The court found that the officer "did not threaten or coerce [the defendant] in any way." *Id.* Likewise, in *Wilson*, the Court noted that the search request was "made without threats, force, or physical intimidation" after the officer encountered the defendant in an airport. 895 F.2d at 170. The circumstances surrounding the pat-down in this case closely track those in *Cohen*. The officers outnumbered the vehicle passengers only by one, and the pat-down itself was a one-on-one interaction between Defendant and Officer Podolak. Officer Podolak was calm and relaxed and asked Defendant his name and if he had a weapon before asking Defendant if

7

it was "cool" for him to pat Defendant down. No officer drew a weapon during the interaction. Officer Podolak obtained Defendant's consent to a pat-down without employing coercion, force, or intimidation.

Defendant relies heavily on *United States v. Robertson* to support his contention that the pat-down was not consensual. 736 F.3d 677 (4th Cir. 2013). However, the tenor of the interaction in *Robertson* varies greatly from the case at bar. In *Robertson*, the defendant was in a bus shelter with five or six other individuals and observed everyone else in the shelter "get 'handled by'" by five uniformed police officers who arrived in three patrol cars before a sixth officer arrived on the scene and approached him. *Id.* at 679–80 (internal citation omitted). The officer was "immediately accusatory," asking the defendant if he had anything illegal on him and, when the defendant did not respond, motioning him forward while asking to conduct a search. *Id.* at 680. The court found that the defendant begrudgingly submitted to a command as opposed to consenting to a request, considering the "police-dominated atmosphere," the officer's accusatory approach, and the fact that the officer blocked the defendant's exit from the shelter. *Id.* Unlike in *Robertson*, the officers here were polite, Officer Podolak's questions and tone were never accusatory or commanding, and Defendant was not blocked in a confined space. Accordingly, and in consideration of the totality of the circumstances, the Court finds that the pat-down was voluntary and consensual.

However, even if Defendant had not provided the requisite voluntary consent, Officer Podolak had reasonable suspicion that Defendant was armed and dangerous and could lawfully pat down Defendant for officer safety. Reasonable suspicion is an

8

objective standard, and the Court considers the totality of the circumstances to "determine if the officer had a 'particularized and objective basis' for believing that the detained suspect might be armed and dangerous." *United States v. George*, 732 F.3d 296, 299 (4th Cir. 2013) (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)). Reasonable suspicion is a less demanding standard than probable cause but requires at least a minimal level of objective justification for the search. "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry v. Ohio*, 392 U.S. 1, 27 (1968). In assessing whether reasonable suspicion existed, "due weight must be given, not to [the officer's] inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Id.* Relevant factors include "the context of the stop, the crime rate in the area, and the nervous or evasive behavior of the suspect." *George*, 732 F.3d at 299. Finally, the connection between drugs and guns makes the presence of drugs or drug paraphernalia a significant factor. *See United States v. Sakyi*, 160 F.3d 164, 169 (4th Cir. 1998) ("The indisputable nexus between drugs and guns presumptively creates a reasonable suspicion of danger to the officer."). A "reasonable suspicion that [a] vehicle contain[s] controlled substances" allows "officers to remove the occupants and conduct a pat-down of each for weapons." *United States v. Coe*, 490 F. App'x 544, 546 (4th Cir. 2012).

Here, the police first encountered Defendant at a Motel 6 known for criminal activity. During the traffic stop, Officer Podolak observed a piece of paper consistent

with marijuana use at Defendant's feet and marijuana residue on Defendant's person as he stepped out of the vehicle. Finally, though not alone dispositive, the officers were aware that Defendant was a known member of the Bloods gang and had a prior conviction for murder. Taking all of these factors into consideration, Officer Podolak objectively had sufficient reasonable suspicion to justify patting down Defendant.

For the foregoing reasons, the Court finds that the officers' actions, as challenged, were reasonable under the Fourth Amendment. Defendant provided uncoerced consent to the pat-down by voluntarily raising his arms in response to Officer Podolak's request. Even if he had not consented, however, Officer Podolak had reasonable suspicion that Defendant was armed and dangerous and could conduct a protective pat-down. Accordingly, Defendant's Motion to Suppress will be denied. An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
Senior United States District Judge

Date: August 19, 2021
Richmond, VA